# EXHIBIT MAC-2

# 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882

## EXHIBIT MAC-2

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File: 1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

Page: 1 of 29        [ source file ]        [ .ots timestamp of source file ]        [ metadata ]

**A25-0882**
**STATE OF MINNESOTA**
**IN COURT OF APPEALS**

| | |
|---|---|
| In re Matthew David Guertin,<br><br>                Petitioner<br><br>  v.<br><br>State of Minnesota,<br><br>                Respondent. | District Court Case: 27-CR-23-1886<br>Court Order Date: April 29, 2025<br><br>**PETITION FOR WRIT OF**<br>**PROHIBITION OR, IN THE**<br>**ALTERNATIVE, MANDAMUS**<br>**& EMERGENCY RELIEF**<br><br>Judge: Hon. Sarah Hudleston |

## I.   INTRODUCTION

Petitioner Matthew David Guertin, pro se, hereby petitions the Minnesota Court of Appeals under Minn. R. Civ. App. P. 120 for an extraordinary writ of prohibition—or alternatively mandamus—against the Fourth Judicial District Court in *State v. Guertin*, No. 27-CR-23-1886. Petitioner seeks to halt and dismiss a criminal prosecution that has been irredeemably tainted by systemic judicial fraud. Specifically, Petitioner has uncovered evidence that forged court records, duplicated judicial signatures, and other falsified filings have infiltrated his case docket as part of a broader "synthetic" docket scheme whose ultimate purpose is nothing short of his permanent elimination, under the cover of psychiatry (*Add. 673-683*). Over the past 29 months, the proceedings have devolved into a Kafkaesque farce: exculpatory evidence was suppressed, then Petitioner's justified complaints about that suppression were twisted to paint him as delusional and trigger repetitive Rule 20 competency cycles. The result is a structural collapse of due process in the trial court, leaving this appellate intervention as the only means to prevent further injustice.

Petitioner's requests are two-fold. First, he asks this Court to dismiss the charges with prejudice given the fraud on the court and egregious due process violations

## 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882

EXHIBIT MAC-2

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

Page: 2 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

involving thousands of synthetic, AI generated case files. In the alternative, Petitioner seeks a writ of prohibition to bar any further Rule 20 competency proceedings (and all other nefarious elements of the psychiatric, and mental "health" narratives that continue to be weaponized against him) in the district court, and to mandate that the case proceed no further under its current corrupted record. To ensure accountability, Petitioner additionally requests that the Court appoint an independent Special Master (e.g. a neutral retired judge and/or a digital forensics expert) to audit the synthetic case files and Minnesota Court Records Online (MCRO) system for authenticity, so as to restore integrity to not just the Petitioner's case, but Minnesota's entire judicial process itself. Only through such extraordinary relief can the judicial system begin to rectify what Petitioner's evidence shows is not a routine criminal case, but a sophisticated, coordinated, and high-level fraud on the court perpetrated by actors both inside and outside of the courtroom.

Petitioner's evidence (*see Master Evidence URL Directory, Add. 695-700*), compiled in a voluminous Addendum (pages 1–717)[1], is both compelling and unprecedented. It reveals, inter alia, that multiple "official" court documents in his case, along with hundreds of others, are literal clones — PDF files bit-for-bit identical — and even carry the exact same judicial signature blocks and timestamps copied from one case to another (*Add. 549-552*). Such an anomaly is impossible under any legitimate judicial process; it could only occur through deliberate template use and forgery. For example, one judge's signature dated "*Oct. 11, 2023 10:37 AM*" appears in *at least seven* different competency orders across various defendants (*Add. 549*), all sharing the identical SHA-256 hash (digital fingerprint) of the signature image. Likewise, another judge's stamp from *Feb. 22, 2023* was copy-pasted into *11 separate orders* in the "Lucas P. Kraskey" case cluster (*Add. 549*), with this case cluster of 12 synthetic cases all assigned to the same, synthetic defendant, also happening to be the very same syntehtic case cluster that

_____

1   **All Addendum Volumes are Available for Download -**

https://link.storjshare.io/s/jxbbwkxbd6tjth3x2wfkvqg6i6bq/evidence/Add/

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

EXHIBIT MAC-2 | p. 2

## 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882
EXHIBIT MAC-2

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

Page: 3 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

Petitioner's compromised, currently assigned Hennepin County Public Defender, Raissa Carpenter was intricately woven into (*Add. 602-607*), more than six months before Petitioner first met her in October of 2024 (the 3,629 MCRO case files Guertin downloaded on April 29-30, 2024 are essentially 'frozen in time' from that point forward *see Petitioner's May 03, 2024 - Affidavit & MCRO Data Analysis, Add. 438-457*). These orders span different defendants and dates, so it is impossible for all to legitimately share the same signature and timestamp. The only explanation is that a fraudulent form order template was cloned en masse. Indeed, the fake orders even share boilerplate text verbatim — for instance, out of the total 129 unique 'Finding of Incompetency and Order' filings Guertin collected, 127 of them contain the *exact* same language and text as that used in his January 17, 2024 order. The only variance within the entire set being the Petitioner's original July 13, 2023 'Finding of Incompetency and Order', and a December 6, 2023 order in case 27-CR-23-3198, which was then quickly repackaged just six days later to match the identical template, as revealed in Petitioner's extensive digital forensic research (*see "SHA-256 Hashes for All Linked Evidence", Add. 701-708*) into the actual contents, and narratives of the many synthetic case files themselves (*Add. 556-559*).

In short, the docket itself has been weaponized: it is not a record of judicial acts, but a facade of cut-and-paste documents designed to mimic due process while subverting it. The entire purpose being to drown the Petitioner in a sea of synthetic case files which mirror his in order to establish a false precedence of the literal operation being waged against him as nothing more than "standard operating procedure" – essentially to convey a message of "People get disappeared into the Minnesota State Security Hospital all the time for various, minor criminal offenses – just look at all of these other defendant's it has happened to as well!"

Behind this fraudulent docketing scheme lies a clear motive and opportunity. Petitioner is the inventor of a highly valuable technology (the InfiniSet virtual treadmill system) for which he received U.S. Patent No. 11,577,177 on February 14, 2023 (*Add. 182-188*). Mere weeks after his patent's approval, Petitioner was suddenly ensnared in

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 3**

## 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882

EXHIBIT MAC-2

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

this criminal case (*complaint filed January 24, 2023, Add. 26*) and very soon after declared incompetent — a status that has conveniently sidelined him for over two years. Petitioner's patent, it turns out, directly preempts a later patent obtained by Netflix, Inc. for essentially the same innovation. An AI analysis Petitioner carried out by inputting both patent's, confirms that Netflix's U.S. Patent No. 11,810,254 (granted Nov. 7, 2023) "appears to be essentially the same" as Petitioner's invention, differing only in superficial terminology (*Add. 182-188*). InfiniSet's patent has priority by 12 days and was even cited as prior art during Netflix's patent prosecution, indicating that Netflix's claims lack novelty and are likely invalid. The stakes of this patent dispute are enormous: a valuation report projects Petitioner's invention could generate on the order of $68–$150 billion in revenue over 20 years (*Add. 192-195*). These facts unveil a disturbing narrative: Petitioner's creation, patent filings's, and assertion of his rights to a multi-billion-dollar technology made him a target. The fabricated court records and psychiatric proceedings were not random bureaucratic errors, but rather a targeted effort to eliminate a high-value intellectual property threat under the guise of law (*Add. 417-437*). As Petitioner bluntly states in his affidavit, ***"This was domestic psychological warfare – aimed at destroying a high-value intellectual property threat... [He] was meant to vanish – locked away indefinitely under the pretext of mental illness"*** (*Add. 434*). In other words, the Hennepin County Fourth Judicial District Court itself became the weapon to neutralize the Petitioner and steal his invention. If you want to see exactly 'why' and understand the background more clearly simply look at the ChatGPT conversation that caused Petitioner to suddenly examine the 3000 + court document's he had been sitting on for a year at that point more closely (*see Add. 408-416*). Or how about the very real, handwritten letter from Petitioner's mother that she wrote to Judge Jay Quam, only to have it intercepted by Judge Julia Dayton Klein's clerk "Lee Cuellar" so that an AI generated replica of the letter could be created, and inserted into Petitioner's case docket and a synthetic case docket just seven minutes apart – only to then have a two and a half hour window of time pass, and then two duplicate replies submitted into Petitioner's case and the synthetic case docket just four minutes apart which share an identical hash? (*see Report 08: The*

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 4**

**5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882**

EXHIBIT MAC-2

---

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf
SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe
Page: 5 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

*Mother's Letter – Smoking-Gun Evidence, Add. 560–572*). Sounds crazy right? Of course it does – because *it is*. It is unprecedented. Shocking. Unbelievable.

Despite these extraordinary allegations, Petitioner's claims are backed by concrete, digital forensic evidence (*see Report 01: Digital Forensic Analysis of MCRO Dataset & Evidence Integrity, Add. 516-525*). He has painstakingly collected and analyzed a total of 3,629 court filings across 163 cases (2017–2023, including his own case) from Minnesota's MCRO system, discovering dozens of digitally identical documents and repetitive anomalies that simply should not exist within a legitimate judicial system (*Add. 346-370*). For example, many *"USPS Returned Mail"* notices in different cases — ostensibly records of unique mailings — turned out to be exact duplicates: the same scanned envelope image reused over and over, with identical SHA-256 hash values and even the same addressees recycled across unrelated defendants (*Add. 332-345*). In a legitimate system, each returned-mail event would be unique; here, the "digital fingerprints" prove that a small set of images was copied into dozens of case files to fabricate a false paper trail of undeliverable mail (*Add. 322-331*). Another analysis shows that entire court filings were uploaded as image-only PDFs (each page embedded as a single picture) — an unusual practice inconsistent with normal e-filing (*Add. 595-601*) — and that these image-based documents bear telltale signs of AI generation. The images exhibit suspiciously uniform noise, repeated visual elements across different files, and uniform 2-bit graphics (every pixel is either all black/all white), all of which are hallmarks of synthetic images created by advanced generative models rather than scans of real documents (*Add. 576–587*). Such a sophisticated fabrication effort would have required substantial technical resources and coordination well beyond any lone individual (*Add. 584-587*). In fact, Petitioner's own digital forensic analysis (using SHA-256 hashing at the object level) discovered hidden tracking codes planted in the PDF files: each bogus case file, and the many synthetic defendant's associated with them, all contain unique six-letter tags (*TTF font subset codes*) that recur only in that defendant's documents (*Add. 588–594*). Statistically, if font subsets were randomly generated, collisions would be virtually zero; yet here, the same few font codes repeat exclusively

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 5**

within particular case clusters (*Add. 590-593*). This indicates the forgers intentionally tagged each fake court file with a distinct code, like a fingerprint, to track their illicit handiwork. In sum, the technology used to frame Petitioner has left a technological trail of breadcrumbs. Those breadcrumbs prove the existence of a criminal conspiracy—one that has subverted the normal functioning of the court system to directly target the Petitioner.

Petitioner has tried every normal avenue to remedy these wrongs. He presented evidence of discovery fraud and document tampering to his prior defense counsel, current defense counsel, and the trial court, only to be met with silence or derision (*see email correspondence at Add. 297–320*). He moved to dismiss the charges with prejudice (*Add. 232–281*) and filed an emergency motion to stay / vacate the April 29, 2025 orders (*Add. 33–66*), yet no meaningful relief has come. Instead, the State and trial court continue to double down on trying to successfully carry own their ultimate plan of permanently disappearing the Petitioner into a mental institution unders the guise of mental "health" — continuing to treat the Petitioner as mentally incompetent, even as he continues to dismantle all of their fraud piece by piece proving that they are actually the ones who are truly incompetent. By late April 2025, even after Petitioner had already successfully completed the terms of the stayed order of civil commitment he was granted in August of 2023 (a successful discharge occurring in early November, 2024), and had finally been judicially declared competent following his March 5 evidentiary hearing, after a battle that spanned mutliple years, Judge Sarah Hudleston abruptly ordered a fourth Rule 20 evaluation and committed Petitioner to the oversight of a *"forensic navigator"* (*April 29, 2025 Orders, Add. 1–5*) in what appears to be a last-ditch effort to regain control of their failed operation. At this juncture, it is clear that Petitioner cannot obtain justice in the trial court. The presiding judge herself is implicated by her direct actions, and on-the-record collusion with the Petitioner's compromised defense counsel, as well as the prosecutor – with ALL of these attorney's directly woven throughout the fabric of the synthetic case dockets, as proven in the Petitioner's extensive foresnic research he carried out (*Add. 602-646*). Any illusion of a fair and properly functioning system of justice in the

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 6**

## 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882
### EXHIBIT MAC-2

Hennepin County Courts has completely collapsed under the weight of this criminal conspiracy. Only this Court's intervention can prevent further irreversible harm. Petitioner is prepared to proceed to trial *pro se* and prove his innocence, but not on a playing field so rigged that the outcome has been predetermined months in advance through the sophisticated creation of completely fake cases, in which the very same people directly involved in his real-world case have also been intricately woven into the synthetic case dockets, and clearly appear to all be carrying out the underlying false narrative of his supposed 'incompetence' they are intended to perpetuate (*Add. 647-683*). He therefore implores the Court of Appeals to take immediate action to dismiss or freeze the lower court proceedings and to appoint a Special Master to investigate and preserve the integrity of Minnesota's judicial records. The issues presented are not only case-dispositive for Mr. Guertin; they strike at the heart of the judicial system's legitimacy. This case represents an unprecedented fraud on the Minnesota courts, in what is almost certainly one of the most sophisticated judicial frauds in American history to ever be uncovered. This situation demands immediate corrective measures to protect the Petitioner's rights.

The following points summarize Petitioner's primary arguments and supporting evidence in more detail. Each point is substantiated by specific citations to the Addendum, which contains the referenced documents, transcripts, and forensic reports. Petitioner respectfully requests the Court's close attention to these materials, as they corroborate every claim set forth.

### II.   SYNTHETIC-DOCKET CONSPIRACY – STRUCTURAL DUE-PROCESS COLLAPSE VIA SHA-256 HASH-COLLISION EVIDENCE

Petitioner's first argument exposes a synthetic-docket conspiracy that has gutted the structural due process of his case. The "docket" in 27-CR-23-1886, and in many other synthetic cases, is not a trustworthy log of judicial actions, but a concocted script — a set of entries and orders generated from pre-existing templates to simulate a proceeding that never truly occurred. This script involves not only synthetic case dockets, defendant's,

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 7**

and filings – buit also real-world actors in the form of attorney's, and judge's. The evidence of this criminal conspiracy is overwhelming. Through forensic hashing analysis (*see article, "WHAT THE HASH? Data Integrity & Authenticity in American Jurisprudence", Add. 687-694*), Petitioner has identified numerous court filings across different cases that are digitally identical down to the byte, indicating they were copied and pasted by a common source. For instance, *twelve* separate "Findings of Incompetency and Order" documents from unrelated cases (the *"Kraskey series"* of cases) were found to share not only boilerplate text but the exact same judge's signature image and timestamp, with a matching SHA-256 hash across all files (*Add. 375-398*, *550*). Such a scenario defies any innocent explanation; it is irrefutable, digital proof of fraud. The judges' signature blocks were essentially treated like reusable digital stamps, affixed to different defendants' orders as needed by the conspirators. There is even seven duplicate signature of the chief judge of the district court, Kerry Meyer mixed into this criminal conspiracy (*Add. 544*).  This means that no actual judge necessarily signed those orders at the time indicated – the *same* scanned signature (and timestamp) was recycled over and over. Indeed, even the meta-data betrays the forgery: in 55 of these suspect PDFs, the judge's digital signing time postdates the file's official filing date, as retrieved based on the naming of the court document's themselves, a temporal impossibility unless the document was back-dated after being created (*Add. 550-551*). In short, the supposed judicial orders are forgeries, inserted into the record to give cover to acts, like permanently disappearing the Petitioner into St. Peter's Minnesota Security Hospital (*Add. 673-683*) that were never jusified, legitimate, or lawfully authorized.

Crucially, the main victim of this scheme is the Petitioner himself. The Addendum documents that a fraudulent incompetency-order template was reused in Mr. Guertin's case (specifically in a January 17, 2024 "Finding of Incompetency and Order," *Add. 371–374*). By early 2024, Petitioner's case had already seen one genuine incompetency order back on July 13, 2023 (following a contested hearing) – an order that was notably unique in format and tailored reasoning (*Add. 556*). But when the conspiracy ramped up, a *new* incompetency order was generated for Petitioner in Jan. 2024 using the

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 8**

## 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882
EXHIBIT MAC-2

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

Page: 9 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

---

fake template, and language that had by then proliferated across other cases. That Jan. 17, 2024 order in Petitioner's case mirrors the boilerplate text and language found across all 127 of the other 'finding of incompetency and order' filings contained in the MCRO evidence set, rather than containing case-specific findings, and also contains the same anomolous e-filing timestamps that diverge from the standard Odyssey e-filing process (*Add. 371*). In other words, after Petitioner's initial July 13, 2023, authentic appearing (yet egregiously deceptive and false insofar as its contents) finding of incompetency order was submitted, the system pulled him back under using a phony cloned order to prolong his state of supposed 'incompetency'. This was done despite no new hearing or evidence – the template was simply deployed to keep the Petitioner ensnared. In fact, Petitioner was also ordered to undergo his third Rule 20 exam on the very same day, and by the very same judge, Sheeran Asakalani, who the Petitioner was instructed to see in order to be granted a Hennepin County Public Defender in October of 2024. In essence, Petitioner has known something was very wrong with his case all along, fought to have his original private defense counsel, Bruce Rivers, removed from his case (after he told Petitioner "you have some very powerful people keeping an eye on you" during a May 22, 2023 phone call only to then deny every saying it), and when he finally succeeded, and was to be granted a public defender in order to finally be able to properly deal with what is, and has been taking place, he was immediately ordered to undergo a third Rule 20 exam before he even had a chance to deal with the fraudulent, and egregious nature of the first two Rule 20 reports that were produced about him, in effect shutting him down a third time before he had the opportunity to address anything at all from a legal perpsective. Furthermore, the third Rule 20 report was prepared without Petitioner's participation, and was submitted to the court on December 20, 2024 with a diagnosis of a "psychotic disorder", a recommendation of forced neuroleptic drugs, and actually uses the Petitioner's claims of fraudulent discovery materials, as well as his own pro se legal actions as evidence to support the diagnosis. Therefore Petitioner's pro se legal actions, and now proven claims of fraudulent discovery materials equals mental illness – the truth equals psychosis, with this egregious "diagnosis" taking place without Petitioner's

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 9**

## 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882
EXHIBIT MAC-2

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File: 1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

[ source file ]        [ .ots timestamp of source file ]        [ metadata ]

participation, just over a month after he had successfully completed his stayed order of civil commitment, and should have been allowed to move forward with some sort of resolution to his case.

Notably this report was produced by Dr. Katheyrn Cranbrook, who is also woven into the fabric of the synthetic case dockets, indicating yet another judicial actor being pre-scripted insofar as their real-world role in Petitioner's court proceedings (*Add. 629-635*).

Such conduct amounts to a fraud upon the court of the highest order. It has continued to strip Petitioner of fundamental rights (liberty, speedy trial, autonomy in his defense) based on falsified judicial authority, and a coordinated criminal conspiracy. The due-process collapse is structural: when the very orders purporting to authorize restraints on the defendant are illegitimate, the court's jurisdiction to act evaporates. Any further proceedings rest on a void foundation.

Beyond Petitioner's individual case, the broader pattern confirms a criminal conspiracy at an institutional scale. Petitioner's forensic analysis uncovered systemic coordination in generating these synthetic dockets. For example, dozens of cases show entries for "Returned Mail" (Federal mail fraud) notices that were clearly fabricated to simulate due process steps. These notices were carbon copies: the same handful of scanned envelope images were reused across numerous files, each image bearing identical digital hashes and even identical addresses in some instances (*Add. 491-496, 569-570, 574*). In reality, returned mail events should be rare and case-specific; here they were manufactured en masse (*Add. 573-587*) to create an illusion that defendants were being notified and failing to respond. This was not sloppy record-keeping—it was a premeditated, coordinated fraud to bolster a false narrative that certain defendants (like Mr. Guertin) "failed to receive" notices or *went missing*, thus justifying secret proceedings or commitment. Similarly, routine orders were mass-produced. Aside from the identical signatures and timestamps discussed above, the text of 127 out of the 129 total incompetency findings that Petitioner downloaded as part of his MCRO evidence

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 10**

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

Page: 11 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

---

collection, was *word-for-word identical*, cutting-and-pasting whole paragraphs (such as directives to the Prepetition Screening Program) across cases. Such uniformity simply "would not occur if the orders were independently written" by different judges for different defendants. This uniformity is the hallmark of a centrally orchestrated operation rather than any legitimate judicial process.

Significantly, evidence points to the epicenter / end goal of this operation being within the State's mental health and judicial bureaucracy. The Petitioner's extensive investigative reports in the Addendum trace suspicious communications and document origins to be those purportedly originating from personnel at the Minnesota Security Hospital in St. Peter (the state's secure psychiatric facility) and related treatment centers (e.g. AMRTC in Anoka). For instance, letters and emails from these supposed hospital officials (*see* Report 19-20, Add. 647–672) show unusual uniformity and coordination regarding multiple defendants deemed incompetent. Peitioner's final forensic analysis report flatly concludes that the Saint Peter Security Hospital is "at the core" of the synthetic MCRO conspiracy (*see* Report 21, Add. 673–683). In essence, the fraud required collusion between court administration and certain state hospital officials: the court records were falsified to present a narrative of committing or holding criminal defendants, and the hospitals were the destination to which those synthetic defendants were sent under false pretenses. This adds a deeply troubling layer to the case – it was not a lone bad actor forging documents, but an apparent collusion between judicial officers and state institutions, weaponizing civil commitment procedures to eliminate inconvenient individuals. Such a scheme undermines the very structure of due process in Minnesota's courts. No defendant can receive a fair hearing if court orders and filings themselves are manufactured by unseen third parties. Accordingly, any actions taken by the trial court in reliance on these fraudulent records are ultra vires and void. Petitioner's right to an impartial tribunal and authentic process has been annihilated. The Court of Appeals must therefore intervene to quash the fake proceedings. At a minimum, a writ of prohibition should issue to prevent the trial court from enforcing or further acting upon any suspect orders (including the April 29, 2025 Order for Evaluation) and to bar any

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 11**

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

Page: 12 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

future use of these corrupted procedures in Petitioner's case. But given the breadth of this criminal conspiracy, and the completely unprecedented nature of all of this, the only just remedy is to dismiss the charges with prejudice, as the judicial process against Petitioner has been irrevocably destroyed. Anything less leaves Petitioner at the mercy of a process that is demonstrably **not real.**

### III.   DISCOVERY FRAUD AND PSYCHIATRIC ENTRAPMENT

From the inception of this case, Petitioner has been subjected to egregious discovery fraud that fed directly into a plan to declare him mentally incompetent. The State withheld, manipulated, and fabricated critical discovery materials  – and when Petitioner protested, those protests were twisted to portray him as paranoid or delusional, thereby entrapping him in an intentional psychiatric narrative feedback loop. This stratagem is laid bare by the record, including hearing transcripts (*Add. 117*-*177*, *282-296*, *6-25*) and exhibits in the Addendum (*Add. 82-116*).

Early on, Petitioner insisted that key evidence in his case had been tampered with or was being wrongly withheld (*see excerpts of Petitioner's May, 2024 Case A24-0780 in this very court, Add. 458-466*). Rather than investigate these claims, Petitioner's own attorney, the prosecution, and the court itself downplayed or ignored them, creating a scenario where Petitioner's only recourse was to persist in raising the issue himself. For example, Petitioner repeatedly informed his currently assigned, compromised defense counsel that certain digital files obtained through discovery did not match what they should have – indicating they were forgeries or planted. Instead of treating this seriously, Raissa Carpenter, and Emmet Donnelly essentially stonewalled him (*see email correspondence, Add. 297–320*). When Petitioner tried to raise the issue in court, the topic was directly acknowledged, and then suppressed. The transcripts from Petitioner's Contested Competency Hearing on March 5, 2025 (*Add. 117–177*) and his first ever appearance in '*normal* court' on April 17, 2025 (*Add. 282–296*) illustrate how Petitioner's attempt to resolve these discovery irregularities, as well as his case as a whole were quickly stifled. In the March 5 hearing, as Petitioner explain the evidence of falsified

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 12**

## 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882
EXHIBIT MAC-2

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

Page: 13 of 29        [ source file ]        [ .ots timestamp of source file ]        [ metadata ]

discovery phot's in explicit detail, only to have the focus shifted back to his "competency" rather than the substance of his claims, even though the very Rule 20 report he was contesting used those very claims of Petitioner's to support its ultimate diagnosis. In the April 17 hearing, the court fixated on Petitioner's beliefs about the case, and the content of his April 16, 2025 Motion to Dismiss (*see Add. 232–281*) – effectively putting his evidence-based assertions on trial, rather than the State's misconduct. The judge's questions and remarks (*Add. 282–296*) show an almost presumptive skepticism of Petitioner's claims, treating them as potential delusions rather than substantiated, evidence-backed (*Add. 82-116*) grievances to be addressed. This was a profound suppression of the truth: by dismissing any mention of discovery fraud as the product of an unsound mind, the court insulated the fraud, and the broader criminal conspiracy from challenge.

A stark example of this dynamic is evident in how certain fabricated evidence was used to paint Petitioner as irrational. Petitioner contends (and the evidence has proven) that some of the photo's in the discovery materials were intentionally cropped and manipulated to present a false narrative, and to hide his InfiniSet, virtual treadmill invention prototype. When he pointed out clear anomalies, his concerns were waved off. Later, in competency evaluations, those very concerns were cited as proof that Petitioner held "delusional" beliefs. In other words, by orchestrating a situation where Petitioner's accurate perception of evidence-tampering could be pathologized, the State created a self-fulfilling incompetency narrative. As the Petitioner's April 21, 2025 Petition to Proceed as Pro Se Counsel succinctly put it: *"The fraud also fatally tainted the Rule 20 psychiatric evaluations, which relied on these manipulated images to justify findings that the Defendant's claims were delusional"* (*Add. 213*). Petitioner's insistence that documents were doctored was actually correct all along – yet those attempting to remain in control labeled this insistence a symptom of mental illness. This is the very definition of entrapment by psychiatry: the more Petitioner tried to prove the fraud, the "crazier" he appeared in the record concocted by the conspirators.

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

## 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882
EXHIBIT MAC-2

The role of Petitioner's currently assigned defense counsel in this chapter cannot be ignored. Rather than championing Petitioner's cause, his current defense counsel has now been revealed to be a part of the criminal conspiracy (*Add. 602-607*), as supported by both Raissa Carpenter and Emmet Donnelly both being directly woven into the sytnthetic case docket's – with Raissa Carpenter assigned to a total of 16 of the synthetic case docket's. The record proves that counsel did absolutely nothing to pursue Petitioner's discovery concerns, and instead are championing a fourth Rule 20 evaluation and the synthetic narrative as a whole by directly acting against Petitioner's interest's and preferred legal startegy. These claims are not conjecture – they are directly supported simply by reading the hearing transcripts in which Petitioner's defense counsel are openly colluding with the judge and prosecutor on the record, in open court.

The April 29, 2025 Faretta hearing transcript (*Add. 6-25*) is especially telling: instead of simply determining if Petitioner knowingly waived counsel (as required by *Faretta v. California*, 422 U.S. 806 (1975)), the court interrogated Petitioner about the content of his beliefs and the soundness of his legal strategies. This is exactly what *Faretta* forbids – a court may not deny self-representation merely because it dislikes or disagrees with the defendant's beliefs or thinks his case is frivolous. Competency to waive counsel is a minimal standard (under *Godinez v. Moran*, 509 U.S. 389 (1993), it's the same as competency to stand trial); Petitioner had already been deemed competent by that point. Yet the court's line of questioning ventured far into an improper merits evaluation of Petitioner's stance, under the guise of concern for his mental state. By doing so, the court effectively transformed the Faretta inquiry into a competency redux, thereby stifling Petitioner's attempt to rid himself of his compromised defense counsel and expose the discovery issues on his own. When Petitioner pressed that he had evidence of serious misconduct, the judge's solution was not to hear him out but to order another mental "health" evaluation (the April 29 order) – thus kicking the can down the road once again via a fourth Rule 20 order being filed against Petitioner.

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 14**

In sum, the State's discovery fraud and the court's complicity in suppressing it have created a vicious cycle that continue violate Petitioner's rights at every turn. Brady material (exculpatory evidence) was withheld, and manipulated – a due process violation in itself. Petitioner's efforts to make a record of that were thwarted, denying him a fair opportunity to present a defense or even a complaint. Then, leveraging Petitioner's frustration, the State, psychological examiners, and the court repackaged the Petitioner's well-founded claims into paranoiac delusions, thereby justifying prolonged ensnarement in its mental health framework, and an unjust commitment. This Court should recognize this pattern as the grave abuse it is. Such conduct offends fundamental fairness and shocks the conscience, meeting any standard for supervisory intervention. The appropriate remedy is to dismiss the charges entirely, as the prosecutorial misconduct (aided by the court's direct participation in the conspiracy) has irretrievably prejudiced Petitioner's ability to defend himself. Short of dismissal, at the very least the Court should issue a writ prohibiting the trial court from continuing to ignore these issues. Any further proceedings must account for and investigate both the discovery fraud, and synthetic docket scheme, not sideline it by questioning Petitioner's sanity. A *Special Master* could be empowered to oversee a thorough review of the discovery, and the synthetic docket's connected to this case in order to identify what was tampered with or suppressed. Petitioner cannot receive anything at all resembling justice unless, and until the taint of this fraud is removed and his right to a meaningful defense is restored.

### IV.   PATENT MOTIVE AND VALUATION – INFINISET PATENT THEFT TIED TO THE CRIMINAL CHARGES

The third argument addresses the motive behind this elaborate fraud: Petitioner's groundbreaking invention and the threat it posed to powerful interests. The unusual ferocity and coordination of the prosecution, defense, and the court against Mr. Guertin make sense only in light of the massive economic stakes surrounding his InfiniSet technology. In short, Petitioner's criminal case was *not* driven by public safety or justice; it was driven by a desire to sideline Petitioner so that others (*Add. 196-199*) such as Light

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0KG#ovYjU8rb7Q1Q

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf
SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe
Page: 16 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

Field Labs, Netflix, DARPA, the US Army, USC-ICT, Ari Emanuel, Paul Debevec, Google, Eric Schmidt, OTOY, Jules Urbach, USC Shoah Foundation, Israel, and many other's in the military-entertainment industrial complex could appropriate his intellectual property (*as revealed in Petitioner's many self conducted investigations into the massive patent fraud conspiracy he has now become a target because of – see examples in Master Docket Index Map, Add. 684, Index 128, 129, and 130*). Also see Petitioner's 'LinkedIn Search Graph' in which searches by DARPA, the U.S. State Department, USC Cinema, Lockheed Martin, Defense Intelligence Agency, U.S. Army, U.S. Air Farce, and many more all align *perfectly* with not only the Petitioner's personal, and business related endeavor's, but also with the fraudulent court proceedings themselves as contained in the Petitioner's federal civil right's "Exhibit C, Index 30, pp 53-61." [2]

As noted, Petitioner is the holder of U.S. Patent 11,577,177 (issued Feb. 14, 2023), which discloses a novel "motorized rotatable treadmill" integrated into virtual production sets, and the Metaverse / VR / AR to allow unlimited realistic movement through a virtual environment (*Add. 182*). This invention was years ahead of its time (*Add. 189-191*). Unbeknownst to Petitioner, tech giant Netflix, Inc. filed a patent application just 12 days after Petitioner (indicative of a theft directly out of the USPTO office) seeking protection for an "omnidirectional treadmill" in combination with LED panels – essentially the same concept under a slightly different presentation, and terminology (*Add. 182-184*). Netflix's U.S. Patent 11,810,254 was granted in November 2023. However, InfiniSet's patent is prior art: Petitioner's filing predates Netflix's by 12 days, and in fact Petitioner proactively submitted his patent to the USPTO as third-party prior art against Netflix's application on February 17, 2023, and his name, and U.S. Patent 11,577,177 are now listed atop the Netflix patent. A side-by-side analysis in the Addendum confirms that Netflix's claimed technology is virtually indistinguishable from InfiniSet's – the differences are purely semantic (*Add. 185-188*). In patent law terms, Netflix's patent

─────────────────

2   Guertin v. Hennepin County | Exhibit C, Index 30 at pages 53-61 |
     https://storage.courtlistener.com/recap/gov.uscourts.mnd.216796/
     gov.uscourts.mnd.216796.10.0.pdf

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 16**

**5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882**
EXHIBIT MAC-2

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

appears invalid for lack of novelty and obviousness, given Petitioner's disclosure (*Add. 184*, *188*). This puts Netflix (and potentially its partners or the broader industry) in a position of having a very valuable but vulnerable patent, and technology that could be invalidated or require licensing from Petitioner.

The valuation of Petitioner's invention underscores why eliminating him would be a priority for those interests. A conservative financial analysis pegs the 20-year net present value of exclusive rights to this technology in the tens of billions of dollars (*Add. 192-195*). The Addendum's valuation report shows an estimated range of $68 billion to $150+ billion in potential revenue from applications of Petitioner's patent (film/TV production, gaming, military training, etc.) (*Add. 196-199*). With stakes that high, the prospect of having to license technology from Petitioner or, worse, seeing Netflix's patent invalidated, would be intolerable to those who have already invested a substantial amount into it. In other words, Petitioner – a single individual – stood, and still stands in the way of multi-billion-dollar corporate, military, big-tech, and governmental related dealings.

It is against this backdrop that the ferocity of the prosecution, and the broader synthetic docket conspiracy comes into clearer focus. Petitioner's arrest and charging (January 24, 2023) came just as his patent was about to issue and his conflict with Netflix was materializing. The charges in 27-CR-23-1886 are directly realted to the entire patent issue itself (*see Master Docket Index Map, Add. 684*, *Index 128*, "*Netflix Whistleblower is Found Alive and Well | Part 1 – The Patent*") [3], and conveniently had the effect of discrediting Petitioner and subjecting him to state control (via mental health commitment) right at that critical moment. Petitioner alleges, and the evidence strongly suggests, that the criminal case was a pretext – a means to an end. By declaring Petitioner incompetent (less than *two weeks* after he submitted a successful third party prior art claim against the Netflix patent application..) and attempting to lock him away in a treatment facility, the orchestrators ensured he "was never meant to re-enter public life, defend his invention, or tell his story" (*Add. 435-437*). They nearly succeeded. According

---

[3]   https://matt1up.substack.com/p/netflix-whistleblower-part-1

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 17**

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

Page: 18 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

to Petitioner's affidavit, he endured a campaign of **psychological and legal warfare intended to make him "vanish"** — hidden away in the bureaucracy of civil commitment while his patent was effectively stolen. Petitioner describes this as **an "assassination attempt… executed through the weaponization of the court itself."** (*Add. 417-437*) That is not hyperbole: he literally feared for his life and still does currently in light of everything taking place. And indeed, had Petitioner not painstakingly documented the fraud and fought for his voice to be heard, his fate likely *would* have been permanent commitment in a psychiatric hospital, with his patent rights quietly usurped in the meantime. The Addendum includes an affidavit detailing what Petitioner terms a near-miss with **"judicial elimination"** — he has survived this long only by relentlessly fighting to expose the breadth of the scheme in time (*Add. 467-503*). This Court need not adopt Petitioner's characterizations wholesale to grasp the essence: the patent provided the motive, and the coordination of otherwise inexplicable judicial anomalies shows the *means* and *opportunity*.

Importantly, this motive implicates not just local officials but potentially actors at very high levels. Petitioner's evidence connects the dots between corporate interest (Netflix), state actors (the prosecutors who pressed the case and the mental health officials who carried out the egregious Rule 20 exam's, and the attempted commitment), and even federal interests, as the technology has direct military and national security applications (*Add. 196-199*). Petitioner's invention *"endangered entrenched corporate, military, and government interests,"* hence a united front was formed to eliminate him. While such an allegation sounds dramatic, and perhaps even "crazy", the sheer scale of the document fabrication and cover-up lends it credibility. The resources and sophistication required (e.g., generative AI for fake court documents, coordinated action and planning required across multiple synthetic case docket's, the involvement of real-world actors, and additional agencies) strongly suggest an operation beyond the scope of a single rogue prosecutor. Petitioner was, in effect, treated as an enemy of the state rather than a criminal defendant – and the "state" in this sense included corporate interests with much to gain.

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 18**

## 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882
### EXHIBIT MAC-2

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

Page: 19 of 29        [ source file ]        [ .ots timestamp of source file ]        [ metadata ]

---

In a court of law, motive alone cannot prove a case, but it can illuminate context and make the otherwise implausible plausible. Here, the motive of patent theft and protection of a $100 billion technology explains why extraordinary measures were deployed against Petitioner. It explains why normal procedure was cast aside (forged orders, secret ttf font codes, etc.) and why the case was allowed to stagnate for years on end with no progress – ***because the goal was never a prompt trial, it was indefinite containment – a life sentence for Petitioner.*** This Court should take judicial notice that Petitioner's situation is *sui generis*: few, if any, criminal defendants come before this Court with documented evidence that their prosecution is a front for a corporate espionage or IP theft scheme. The usual presumptions about regularity of official conduct cannot hold in such an anomalous scenario. Therefore, the Court must be willing to look beyond the surface "record" (especially since that record is demonstrably corrupted) and consider the uncontested facts about Petitioner's invention and its value. Those facts provide a compelling reason to credit Petitioner's claims of a criminal conspiracy. At the very least, they demand a rigorous inquiry via a Special Master or evidentiary hearing to determine whether the prosecution of Mr. Guertin has been irreversibly compromised by conflicts of interest, misconduct, and a synthetic court docket scheme. Under principles of due process and the court's supervisory powers, if a prosecution is driven by such an illegitimate motive and accompanied by such fraud, dismissal is the appropriate remedy. The judiciary must not be used as a tool of private plunder or personal vendetta. To allow this case to proceed under these circumstances would be to condone an abuse of the criminal justice system for ulterior ends.

### V.   DELAY AND RULE 20 ABUSE – 29-MONTH DELAY AND RECYCLED COMPETENCY ORDERS

The fourth issue highlights the extreme delay in this case and the abusive manipulation of Rule 20 competency proceedings to achieve that delay. From charging through the present, approximately 29 months have elapsed, yet Petitioner has not seen a trial or any resolution on the merits. This delay far exceeds ordinary speedy-trial

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

EXHIBIT MAC-2 | p. 19

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File: 1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

Page: 20 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

timelines and was largely engineered by repetitive, unjustified, and egregiously false, and deceptive competency evaluations, and resulting report's. In essence, whenever Petitioner moved the case toward a substantive crossroads (asserting his rights, pushing for trial, exposing misconduct), the State and trial court continually hit the "pause button" by invoking Rule 20 once more – even in the absence of any legitimate basis to doubt competence. This tactic not only violates Petitioner's speedy trial rights but also constitutes a clear abuse of discretion warranting writ relief.

Under Minnesota law, a defendant may not be subjected to a competency evaluation (Rule 20.01) unless the court *"determines that there is a reasonable basis to doubt the defendant's competency"*. Minn. R. Crim. P. 20.01, subd. 3(b). The rule envisions that a genuine question of the defendant's ability to consult with counsel or understand the proceedings must arise, at which point the court suspends proceedings for an evaluation. It is not a tool to be used lightly or repeatedly; once a defendant is found competent, the case should proceed. In Petitioner's situation, the trial court and prosecution utterly perverted this process. After the initial, orchestrated finding of incompetency in July of 2023, Petitioner was granted a stayed order of civil commitment, successfully completed the term's of this stayed order, and on April 3, 2025, the court issued an order explicitly finding Petitioner competent (*Add. 178–181*). That should have cleared the way for the case to move forward – indeed, Petitioner promptly asserted his *Faretta* right to self-representation and sought to finally address the pending charges and his motions on the merits. However, the State was not prepared to relinquish its narrative of Petitioner as "crazy." Within weeks, at an April 29, 2025 hearing (*Add. 6–25*), the prosecutor urged – and the court agreed – that Petitioner's mere act of insisting on his pro se rights and pointing out irregularities was evidence of renewed incompetence. By the end of that hearing, the judge had reversed course and ordered yet another, fourth Rule 20 evaluation (*Add. 1–3*), appointing a forensic navigator to assume custody over Petitioner (*Add. 4–5*). This occurred without any new incident or evidence that could rationally create a "reasonable basis" to doubt Petitioner's competency – other than the fact that Petitioner was persisting in claims the court found inconvenient. In other words, the court

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 20**

improperly treated Petitioner's legal strategy and allegations (no matter how well-founded) as ipso facto signs of mental instability. This is a patent abuse of Rule 20. Competency proceedings are meant to protect a defendant's rights, not to be wielded as a weapon to discredit or silence a defendant. By ordering a new evaluation in the absence of genuine doubt, the trial court exceeded its authority under Rule 20.01 and violated due process.

By early 2025, when Petitioner finally succeeded in his battle to have competency restored, he expected to finally engage the merits. Instead, as detailed above, the State and court has now contrived a fourth incompetency interlude starting late April 2025. Petitioner immediately objected and filed motions to counter this (*including an Emolyency Motion to Stay on May 7, 2025, Add. 33–66*), but the trial court (directly implicated in the broader criminal conspiracy, as noted) did not grant relief. As of the filing of this petition in mid-2025, Petitioner is facing the prospect of a fourth court-appointed psychological examiner (*see Add. 629–635, documenting the 3rd Rule 20 examiner, Katheryn Cranbrook*) and further months of delay, with the very real threat of being unjustly disappeared into a mental institution under false pretenses. In fact, in Report 18 (*Add. 636–646*) Petitioner shows that a psychological examiner, Dr. Kristin Otte, who is extensively woven into the synthetic case docket narrative as a key figure, was also surreptitiously inserted into the back-end Odyssey system of Petitioner's case even though she has had no actual involvement to date – a *"hidden"* evaluator entry that raises even more due process red flags. All told, the case has drifted for over two years with essentially *no adversarial testing of the charges*. This state of affairs makes a mockery of Petitioner's Sixth Amendment rights. The intentional prolonging of incompetency status crosses the line into denial of a speedy trial. The U.S. Supreme Court has recognized that while delays due to competency evaluations may be justified, excessive or purposed delays are not and violate due process (*see Jackson v. Indiana*, 406 U.S. 715 (1972)), holding that indefinite commitment on incompetency is unconstitutional). Here, Petitioner's repeated attempt's at commitment, and recycled incompetency claim's have been anything but "neutral" or "administrative" – it has been

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 21**

## 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882

EXHIBIT MAC-2

manipulated to avoid reaching the point where the fraud would be exposed (i.e., a trial or evidentiary hearing).

      Moreover, the timing of the renewed Rule 20 invocation suggests a retaliatory or preventive motive: it came immediately after Petitioner filed a series of motions and affidavits in April 2025 blowing the whistle on the synthetic docket scheme. The trial judge's abrupt change in stance strongly implies that Rule 20 was used not because Petitioner truly could not understand the proceedings, but because Petitioner understood them all too well and was about to bring inconvenient truths to light. This Court should not countenance such a cynical misuse of mental health procedures. It offends not only Petitioner's rights but also the integrity of the judicial system. A defendant who is competent (as Petitioner was found to be) has the right to force the State either to proceed to trial or dismiss the case – the State cannot interminably delay by recycling competency doubts whenever it feels its fraudulent narrative, and syntehtic case narrative is unraveling. The Minnesota Rules of Criminal Procedure and due process precedents provide mechanisms to prevent exactly what has happened here. For example, if a defendant regains competency, prosecution must resume or the charges be dropped; the State cannot simply do nothing (*see* Minn. R. Crim. P. 20.01, subd. 7 (2019), which before repeal provided for dismissal after certain periods of incompetency, and the principle still recognized in case law). By dragging its feet and re-raising competency without cause, the State circumvented any potential triggers for dismissal and avoided the ticking clock of a trial. This Court, exercising its supervisory powers, should right that wrong.

      Accordingly, Petitioner urges that a writ of prohibition issue to bar any further Rule 20 proceedings in this case. Petitioner has been declared competent; that is the law of the case unless bona fide new evidence of incompetence arises (which it has not). The trial court should be prohibited from ordering any additional evaluations or commitments of Petitioner on the pretext of competency. Additionally, this Court should consider a writ of mandamus directing the trial court to set the case on for immediate trial (should the

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf
SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe
Page: 23 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

case not be dismissed), given that the usual remedy of a post-conviction speedy trial dismissal is inadequate here – Petitioner may never get to trial at this rate, and the harm is ongoing. The prejudice to Petitioner from the 29-month delay is not just presumed but palpable: he has lost time, liberty, and evidence (memories fade, and the continued stress and restrictions impair his ability to mount a defense). Most importantly, the delay has been leveraged to *suppress the truth* and perpetuate the fraud. This Court's intervention is necessary to break the cycle. Time is a weapon in the hands of those behind this criminal conspiracy; a firm appellate order is needed to take that weapon away.

### VI.   TRACKING FONTS AND CLONED ORDERS – EMBEDDED DIGITAL PROOF OF AI-GENERATED COURT RECORDS

The fifth argument focuses on the digital forensic proof that much of the court record in this case (and related cases) was generated by artificial means – essentially by algorithms and advanced AI rather than by judges and court staff. Petitioner's expert digital forensic analysis (*see Declaration of Matthew David Guertin, Add. 713-717*) has uncovered layers of hidden data within the PDFs that functioned as "watermarks" of the fraud, as well as glaring technical anomalies pointing to AI involvement. This evidence not only further confirms the existence of the synthetic docket scheme, but it also provides this Court a precise and objective method to verify the fraud for itself. The high-level military, "intelligence", and government connected fraudsters, have inadvertently left a trail of unique digital markers in their wake. By following those markers (already documented in the Addendum), the Court or a Special Master can independently corroborate Petitioner's claims into the incompetence of the architect's of this criminal conspiracy without needing to rely on his personal credibility (although at this point one could argue that the supposedly "incompetent" and "psychotic" Petitioner is in fact the only one who still has so much as a shred of credibility still remaining).

One of the most striking pieces of evidence is the discovery of embedded font subset codes used as tracking tags. In almost every synthetic docket file, fonts included in the document are labeled with subset names, often appearing as random combinations of

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

six letter font "codes". Petitioner's digital forensic analysis (*Report 11, Add. 588–594*) processed, and analyzed all of these font code strings from all the suspicious MCRO PDF files. The result was astonishing: certain six-letter codes kept recurring in documents belonging to the same defendant (regardless of slight name variation's) or the same small cluster of cases, but rarely (or never) appeared in others (*Add. 589*). In a normal scenario, these codes are generated by software and collisions (repeating codes) across different cases would be virtually zero, given 26^6 possibilities (*Add. 589*). Yet here, *"specific SHA-256 hashes (and their six-letter TTF codes) are overwhelmingly linked to individual defendants"* – a pattern "virtually impossible" to attribute to chance (*Add. 590-594*). The clear implication is that the perpetrators deliberately implanted a digital signature into the files: each synthetic defendant's fake documents were produced with a consistent, unique, six-letter font tag (e.g., "OLGBLK+Calibri") - as a secret identifier, and tracking system that likely served to assist in the generation and tracking of these synthetic defendant's and their cases files. It is akin to a forger using a particular ink or stamp for each victim. This hidden tagging is powerful evidence of a centrally orchestrated, high-level "intelligence" backed operation. No legitimate court process would involve such tagging, and certainly not in a way that correlates one-to-one with specific defendants, regardless of the slight name variations introduced into the synthehtic case cluster's (e.g., "Makis Duvell Lane" and "Makis Devil Lane"). This Court can verify the font code phenomenon by a simple examination of the PDF properties (the Addendum provides substantial CSV data tables, in which every row usually contains a url link to the source for easy verification – *see "Report 01: Digital Forensic Analysis of MCRO Dataset & Evidence Integrity," Add. 516-525, and "Master Evidence URL Directory," Add. 695-700*). It's an empirical, scientific, and irrefutable digital indicator of fraud.

Another piece of technical evidence is the prevalence of image-based PDF filings rather than text-based PDFs in the synthetic cases (*Report 12, Add. 595–601*). Typically, when courts issue orders or when parties e-file documents, PDFs contain actual text (so they are searchable, and one can highlight text). But Petitioner found that many documents in his case and related cases consist of nothing but scanned images of text –

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 24**

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

often poor-quality images at that. Each page is effectively a picture (PNG/JPEG) embedded in the PDF (*Add. 599*). While scanned images do occasionally appear in normal court records (e.g., if an exhibit is a photo or if a mailed, handwritten letter got scanned), it is highly unusual for core judicial orders or routine notices to be handled this way. Yet in the fraudulent cases, entire orders, notices, and letters were image-only, with no underlying text layer. Some had traces of OCR (optical character recognition) font embedded, suggesting someone tried to make them searchable post-hoc. The forensic report concludes that the visual layout and composition of these filings "bear the hallmarks of digital fabrication." (*Add. 600*) For example, the formatting might mimic a court header but with subtle misalignments; the seals or stamps might appear as low-resolution copies; signatures might be identical across documents. In fact, the Addendum's analysis of the *USPS returned-mail scans* (see *Report 10, Add. 576-587*) showed numerous red flags of AI-generated images: *"repeated and identical visual elements across different mail scans, unnatural uniformity in image noise and textures, and warped details…characteristic of modern AI-generated imagery."* (*Add. 576*) In lay terms, these documents look "off" under close inspection – as if a computer program assembled pieces of real documents into a composite, or as if an AI was told to imagine what a court order looks like. Authentic court documents, by contrast, have inconsistent but human characteristics (different fonts if prepared by different people, varied scanner marks, etc.). The synthetic documents lack those human variances; they are too controlled, too polished in some ways and too glitchy in others, to be genuine.

What does this mean for Petitioner's case? It means that virtually the entire paper trail of his prosecution is untrustworthy. From the criminal complaint to the various orders and notices, many of the key documents appear to have been generated artificially. If the documents are not what they purport to be, then any actions taken based on them are fundamentally invalid. The presence of AI-generation evidence raises the question of who actually wrote or authorized the documents. If not the judges or clerks, then those documents carry no legal force. They are, in essence, nullities – counterfeit court documents, which is a crime in itself (for example, simulating legal process). Petitioner

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 25**

Matthew Guertin v. Tim Walz, 8th Circuit Appellate Case: 25-2476

## 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882
### EXHIBIT MAC-2

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf
SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

Page: 26 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

has effectively caught the perpetrators in the act by exposing these hidden markers. The Court should seize upon this opportunity to purge the tainted documents. At a minimum, any document in Petitioner's case that shares an identical hash, or language with the synthetic case docket's should be presumed fraudulent and stricken from the record. Without those, the prosecution's scaffold and the entire criminal conspiracy collapses.

In broader terms, this digital proof underscores why a Special Master is needed. The technical complexity of the fraud (embedding font code tags, using AI image generation, etc.) might be beyond the day-to-day expertise of judges or lawyers. A Special Master with digital forensics expertise can thoroughly audit the files, confirm the digitally irrefutable patterns Petitioner has identified, and perhaps even trace the origin of the fraudulent documents back to the military, "intelligence", or governmental agency that is almost certainly responsible for their creation. This is necessary not only to vindicate Petitioner's rights but to protect the integrity of the judicial system going forward. Being that it is now irrefutably clear that someone has found a way to use generative AI and clever PDF editing to inject entire fake cases and orders into the system, the appellate courts must step in to expose and stop it, lest public confidence be irreparably damaged. Petitioner's case can be the catalyst for uncovering the truth. The embedded proof is there in black and white (and in metadata) – the Court need only follow it.

### VIII.   CONCLUSION

In conclusion, Petitioner emphasizes that the fraud is objectively verifiable. He is not asking the Court to believe a wild conspiracy theory on faith; he is providing the digital fingerprints and forensic breadcrumbs so the Court can see the fraud with its own eyes. The presence of unique tracking fonts and the AI-crafted filings show that what happened to Petitioner was not a series of accidents but a centrally planned scheme. When technology is used to undermine the judiciary, the judiciary must use technology to fight back.

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 26**

## 5/29/2025 | Petition for Writ of Prohibition | MN COA Case A25-0882
### EXHIBIT MAC-2

This Court's issuance of a writ and appointment of a Special Master will signal that Minnesota's appellate system will not be duped by deepfakes and digital legerdemain. The law will always find a way to catch up with those incompetent individuals, and agencies who attempt to subvert it. Here, the pathway is clear: recognize the fraud, excise it, and hold those responsible to account in due course. But for now, the immediate need is to free Petitioner from this digital nightmare he has been trapped within for the past 29 + months, and ensure that no further actions in his case rely on or perpetuate the falsified records. The Petitioner simply want's his life back.

### IX.   PRAYER FOR RELIEF

**WHEREFORE,**

Petitioner Matthew David Guertin respectfully prays that this Court grant relief as follows:

**1.        Dismissal with Prejudice**

Issue a writ or order dismissing *State v. Guertin*, No. 27-CR-23-1886, *with prejudice*, on the grounds of egregious government misconduct, fraud on the court, and fundamental due process violations that irreparably prejudice Petitioner's rights. This dismissal should bar any further prosecution of Petitioner based on the tainted charges, as no lesser remedy can restore integrity to these proceedings.

**2.        Writ of Prohibition (Competency Proceedings)**

In the alternative to outright dismissal, issue a writ of prohibition restraining the Fourth District Court (Hon. Julia Dayton Klein or any successor judge, such as the currently assigned Judge Sarah Hudleston) from conducting any further Rule 20 competency evaluations or related proceedings in Petitioner's case. The writ should direct that Petitioner be deemed competent for all purposes going forward (absent a genuine supervening medical crisis), and forbid the trial court from using Minn. R. Crim. P. 20.01 as a mechanism for further delay or

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf

SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe

Page: 28 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

suppression of Petitioner's defense. Compliance with this writ will ensure the case cannot be derailed again on competency pretexts.

**3.      Writ of Mandamus/Special Master Appointment**

Additionally (or in conjunction with the above relief), issue an order or writ of mandamus compelling the appointment of an independent Special Master to investigate and audit the records in Petitioner's case and related cases. The Special Master should be a neutral and qualified expert (for example, a retired judge or a digital forensics professional or firm) empowered to:

- Examine the original court files, MCRO entries, and PDF documents in 27-CR-23-1886, and the synthetic case docket's to identify, and confirm the forged, duplicated, and AI-generated materials;

- Secure and preserve any, and all MCRO evidence of systemic record falsification, including metadata, server logs, or correspondence that may reveal the source of the forgeries;

- Report findings to this Court within a reasonable time (with status updates as appropriate) regarding the extent of the sytnehtic docket manipulation and any individuals or entities appearing to be involved; and

- Recommend any additional remedial actions necessary to ensure a full and transparent accounting of the fraud (such as referral to law enforcement, corrections to official records, or broader audits of the court's case management systems).

The Special Master's appointment will serve the dual purpose of aiding this Court in resolving the instant petition (by providing an objective record of the fraud) and safeguarding the judicial system's integrity by uncovering how deep the wrongdoing runs.

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q

**EXHIBIT MAC-2 | p. 28**

MN-COA_Petition-for-Writ__2025-05-29_LINKS_.pdf
SHA-256 Hash of Source File:  1d9c71ab71a15c251db99616d066e5a6909b3cd6258e9ea1dff3766a9a5faefe
Page: 29 of 29          [ source file ]          [ .ots timestamp of source file ]          [ metadata ]

**4.     Ancillary Relief**

Grant such other and further relief as the Court deems just and proper, including but not limited to: ordering the expungement of fraudulent documents from Petitioner's case file; staying all proceedings in the trial court pending resolution of this petition; tolling any appellate or procedural deadlines affected by the ongoing fraud; and, if necessary to effectuate the above relief, transferring venue or assigning a different judge for any future proceedings (given the conflict of interest in the current trial bench being potentially complicit or a witness in the fraud).

Petitioner emphasizes that each of the above remedies is requested in the alternative and cascading order: dismissal being the most logical, appropriate, and complete remedy, prohibition of further fraudulent process as a minimum necessary safeguard, and auditing via Special Master as a means to rebuild the integrity of the State's judicial record.

Petitioner trusts that this Court, upon reviewing the evidence, will calibrate the relief to ensure that he is no longer victimized by a process that has lost any semblance of fairness. The fundamental rights to due process, to a speedy trial, to counsel of choice (or self-representation), and to a fair tribunal have all been violated in this case. This Court's intervention is the last bulwark against an unprecedented miscarriage of justice.

Dated:  May 29, 2025

*Respectfully submitted,*

 _/s/ Matthew D. Guertin_

Matthew David Guertin
*Petitioner Pro Se*
4385 Trenton Ln. N 202
Plymouth, MN  55442
Telephone: 763-221-4540
MattGuertin@protonmail.com
www.MattGuertin.com

**Url 1:** link.storjshare.io/raw/jxfpzixzngi7mhg2mut7px67eeha/file/EXHIBIT MAC-2_files.pdf
**Url 2:** MnCourtFraud.Substack.com/api/v1/file/204b933c-3152-4d0d-8f0b-386175abf799.pdf
**Url 3:** Matt1Up.Substack.com/api/v1/file/cdcda7b2-f957-4554-a957-11a22f6ab606.pdf
**Url 4:** drive.proton.me/urls/Y6DZ8TKB0G#ovYjU8rb7Q1Q